IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

GLYTEC LLC,                                    )        C.A. No. 6:25-cv-03211-DCC
                                               )
                     Plaintiff,                )
                                               )
v.                                             )        **OPINION AND ORDER**
                                               )
PRISMA HEALTH,                                 )
                                               )
                     Defendant.                )
_____ )

        This matter is before the Court on Plaintiff's Motion for Preliminary Injunction.[1]

ECF No. 10.  Defendant filed a response in opposition, and Plaintiff filed a reply.  ECF

Nos. 23, 32.  The Court held a hearing on the matter on May 20, 2025.[2]  ECF No. 36.

The Motion is now ripe for review.

## I.  BACKGROUND

**A.  Factual Background**

        Plaintiff is a Delaware limited liability company that operates within the healthcare

technology field, providing insulin management software solutions to hospital systems via

---

[1]  Plaintiff's initial Motion sought both a temporary restraining order ("TRO") and preliminary injunction.  ECF No. 10.  On April 24, 2024, the Court, having reviewed the Motion, found nothing that suggested the Court should consider the Motion for TRO ex parte.  ECF No. 13.  As such, Plaintiff was directed to serve a copy of the complete motion on Defendant and file a certificate of service with the Court, and Defendant was directed to file a response within 14 days after receiving a copy of the motion.  *Id.*

[2]  Prior to the hearing, Defendant filed a Motion to Dismiss and a Motion to Strike Jury Demand.  ECF Nos. 18, 19.  The Motions were not fully briefed at the time of the hearing, and, while they are now fully briefed, the Court declines to address these Motions at this juncture.

a licensing agreement.  ECF No. 1-1 at 48–49.  Plaintiff's patented and FDA-cleared insulin management software solutions are licensed under the Glucommander name.  *Id.* at 49.  In 2006, Plaintiff's parent company and Defendant's "predecessor in interest," Greenville Hospital System ("GHS"), entered an "Equipment and Software Evaluation Agreement" whereby Plaintiff provided GHS with insulin management software.  *Id.* at 54.  In 2007, Defendant was formed by the merger of GHS and another hospital system, and in the years following the merger, the Parties entered into subsequent license agreements for use of Plaintiff's glucose management software, including the Glytec Master Service Agreement (the "Agreement").  *Id.* at 53–54.  Section 2.2 of the Agreement provides, in relevant part:

> [Defendant] shall not and shall not permit anyone else (including its Affiliates) to, directly or indirectly, copy, reproduce, amend, modify, create derivative works of, adapt, translate, distribute, reverse engineer, reverse assemble, disassemble, decompile, attempt to discover the source code or structure sequence or organization of any software accessed or provided hereunder. . . . [Defendant] shall not, directly or indirectly, and shall not permit anyone else (including its Affiliates) to access or use the Glytec Services or Documentation in any manner in connection with or to develop a commercially available or competing product or service. . . . The Glytec Service is a product proprietary to [Plaintiff] based upon and containing trade secrets and other confidential information of [Plaintiff], and [Plaintiff] owns all right, title, interest, including all intellectual property rights, in and to the Glytec Service and documentation.

*Id.* at 55.  Plaintiff alleges that Defendant breached this provision of the Agreement by "illegally reverse engineering [Plaintiff]'s trade secret algorithms" and misappropriated Plaintiff's trade secrets.  *Id.* at 47, 56–64.

Specifically, Plaintiff alleges that beginning in 2022 Defendant began to discuss developing its own insulin management system and tasked its employee, Laura Turman,

with developing a replacement for Gluccommander.  *Id.* at 56–57.  Plaintiff, citing to several internal communications produced by Defendant, alleges Defendant's employees set about figuring out how Plaintiff's software adjusts its multiplier through reverse engineering and testing it against Glucommander to determine whether it would get the same results.  *Id.* at 57–61.  Turman held meetings with Defendant's employees discussing aspects of Glucommander that she still needed to "crack the code" on so that Defendant could terminate its agreement with Plaintiff and begin using its own developed software.  *Id.* at 61–64.  Turman and other employees of Defendant used Plaintiff's test site to run patient simulations to further their efforts to reverse engineer Plaintiff's software.  *Id.* at 65.  Through its reverse engineering efforts, Defendant was able to create glucose management software (the "Prisma Software") to mimic Glucommander's functionalities.  *Id.* at 62.  In 2024, Turman began presenting this software to Defendant's employees and by March 5, 2024, Defendant began treating patients with the Prisma Software.  *Id.* at 63–64.  Defendant also had conversations concerning presenting the Prisma Software to other hospitals via a "roadshow" and at an industry conference.  ECF Nos. 35 at 2; 35-22; 35-23.

## B.  Procedural History

On July 12, 2024, Plaintiff filed this action in the Court of Common Pleas for Greenville County, South Carolina as Civil Case No. 2024-C-23-04312.  ECF No. 1 at 1.  Based on Defendant's alleged conduct, Plaintiff brought several causes of actions, including claims for breach of contract, violation of the South Carolina Unfair Trade Practices Act, unjust enrichment, and permanent injunctive relief.  ECF No. 1-1 at 11–16.  On April 15, 2025, Plaintiff amended its complaint to add a claim for misappropriation of

trade secrets under the Federal Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq.  ECF Nos. 1 at 2; 1-1 at 68.  On April 16, 2025, Defendant filed a Notice of Removal to this Court.  *See* ECF No. 1.

On April 23, 2025, Plaintiff filed its Motion for Preliminary Injunction.  ECF No. 10.  Plaintiff seeks to enjoin Defendant from disclosing or disseminating any of Plaintiff's trade secrets or confidential information, by presentation or otherwise, either directly or indirectly, of the Prisma Software, which was allegedly developed from, and to compete with, Glucommander.  ECF Nos. 10-4 at 2; 35 at 2, 14.[3]  Plaintiff further seeks Defendant be enjoined from marketing, promoting, selling, licensing, offering for sale, offering for license or transferring the Prisma Software and from altering, erasing, deleting, destroying, or modifying any version of the Prisma Software.  ECF No. 10-4 at 2–3.  Plaintiff asserts in its Motion for Preliminary Injunction that it does not yet seek to prohibit Defendant from using Glytec's trade secrets because doing so would leave Defendant without insulin management software, which may harm patients.  ECF No. 35 at 14.  Additionally, Plaintiff seeks for the Court to order Defendant to take several affirmative steps pending final resolution of this case.  ECF Nos. 10-4 at 3–4; 35 at 2.

## II.  APPLICABLE LAW

Preliminary injunctions are governed by the standard set forth in Federal Rule of Civil Procedure 65.  *See* Fed. R. Civ. P. 65; *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008).  A party seeking a preliminary injunction must establish all four of

---

[3] Concurrent with the filing of its Motion for Preliminary Injunction, Plaintiff filed a Motion to Temporarily Seal its Memorandum in Support of the Motion for Preliminary Injunction.  ECF No. 9 at 1.  A Consent Order was later entered on this Motion, by which the Parties agreed to filing the Memorandum in Support on the public docket.  ECF No. 33 at 1.

the following criteria: (1) that the party is likely to succeed on the merits of his claim; (2) that the party is likely to suffer irreparable harm in the absence of a preliminary injunction; (3) that the balance of the equities tips in the party's favor; and (4) that the injunction is in the public interest. *League of Women Voters of N. Carolina v. N. Carolina*, 769 F.3d 224, 236 (4th Cir. 2014) (citing *Winter*, 555 U.S. at 20). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24 (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). The traditional purpose of a preliminary injunction is "to protect the status quo and prevent irreparable harm during the pendency of a lawsuit." *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) (citing *Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013)). "A preliminary injunction shall be granted only if the moving party clearly establishes entitlement to the relief sought." *Id.* (citing *Fed. Leasing, Inc. v. Underwriters at Lloyd's*, 650 F.2d 495, 499 (4th Cir. 1981)). The party seeking the preliminary injunction bears the burden of proving, by a preponderance of the evidence, all four elements of the preliminary injunction determination. *Toolchex, Inc. v. Trainor*, 634 F. Supp. 2d 586, 591 (E.D. Va. 2008); *Planned Parenthood S. Atl. v. Wilson*, 527 F. Supp. 3d 801, 807 (D.S.C. 2021). "A preponderance of the evidence is evidence which convinces the fact finder as to its truth." *Prysmian Cables & Sys. USA, LLC v. Szymanski*, 573 F. Supp. 3d 1021, 1035 (D.S.C. 2021); *Pascoe v. Wilson*, 788 S.E.2d 686, 693 (S.C. 2016).

## III. DISCUSSION

### A.  Preliminary Injunction Determination

Plaintiff contends it has satisfied all four of the required elements for seeking a preliminary injunction. ECF No. 32 at 15. Defendant contends Plaintiff's requested

preliminary injunction relief would disrupt the status quo, rather than preserve it, and that Plaintiff has failed to demonstrate a "likelihood of success on the merits" or show "immediate and irreparable injury." ECF No. 23 at 1–2. The Court addresses each of the four criteria in turn below.

1. *Likelihood of Success*

Plaintiff contends it is likely to succeed on the merits of its claims for trade secret misappropriation and breach of contract.[4]  ECF No. 35 at 17–20. Defendant argues Plaintiff cannot demonstrate a "clear showing" of likelihood of success on the merits because Plaintiff publicly disclosed its proposed "trade secrets," its claims are federally preempted, and it cannot succeed on its breach of contract claim. ECF No. 23 at 5–26. Before granting injunctive relief, the Court must find that the party seeking the injunction has made a "clear showing" that it is likely to succeed on the merits. *See Winter,* 555 U.S. at 22; *Occupy Columbia v. Haley*, 866 F. Supp. 2d 545, 552 (D.S.C. 2011). This standard compels the moving party to show that it is *likely* to prevail. However, a finding of a likelihood of success on the merits is not "tantamount to [a] decision[ ] on the underlying merits," and courts should not "improperly equate[ ] 'likelihood of success' with

---

[4] It appears from the Parties' briefing that Plaintiff's claims for breach of contract accompanied by a fraudulent act (Count IV), violation of South Carolina Unfair Trade Practices Act (Count V), and unjust enrichment (Count VI) are not at issue. *See* ECF Nos. 1-1 at 66–76; 10; 35; 23; 32. Accordingly, the Court does not address these claims, especially because, as the Court finds below, Plaintiff has demonstrated a likelihood of success on its claims for trade secret misappropriation (Counts II and III) and breach of contract (Count I). "Finding a likelihood of success on only one claim is sufficient to 'justify injunctive relief.'" *Variable Annuity Life Ins. Co. v. Coreth*, 535 F. Supp. 3d 488, 494 n.3 (E.D. Va. 2021) (citation omitted).

'success.'" *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 394 (1981); *see also SCE & Gas Co. v. Randall*, 333 F. Supp. 3d 552, 564 (D.S.C. 2018).

a.  Trade Secrets Claims

Plaintiff brings claims against Defendant for misappropriation of trade secrets under both the South Carolina Trade Secrets Act ("SCTSA") and Federal Defendant Trade Secrets Act ("DTSA").  ECF No. 1-1 at 68–72.  To succeed on a claim for misappropriation of trade secrets, a plaintiff must establish the existence of a trade secret and actual or threatened misappropriation of that trade secret.  *See Nucor Corp. v. Bell*, No. 2:06-CV-02972-DCN, 2008 WL 9894350, at *8 (D.S.C. Mar. 14, 2008) (citing *Lowndes Prods., Inc. v. Brower*, 191 S.E.2d 761, 764 (S.C. 1972); *Williams v. Riedman,* 529 S.E.2d 28, 42 (S.C. Ct. App. 2000); S.C. Code Ann. § 39-8-50(A)); *Boon Ins. Agency, Inc. v. Lloyd*, No. 3:20-CV-02980-JMC, 2020 WL 5052956, at *4 (D.S.C. Aug. 27, 2020) (citing 18 U.S.C. § 1836(b)(1), (3)(A)–(B)).  The Court addresses each of these elements below.

i.  Existence of Trade Secret

The SCTSA and the DTSA define "trade secret" in an almost identical manner. Under both SCTSA and DTSA, a trade secret:

> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by the public or any other person who can obtain economic value from its disclosure or use; and
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

*See* S.C. Code Ann. § 39-8-20(5)(a); 18 U.S.C. § 1839(3)(B).  The burden of establishing the existence of a trade secret rests on the plaintiff.  *See Lowndes Prods.*, 191 S.E.2d at

7

765.  A misappropriation of a trade secrets claim requires parties to specifically identify the trade secrets at issue.  *Carolina Chem. Equip. Co. v. Muckenfuss*, 471 S.E.2d 721, 724-25 (S.C. Ct. App. 1996).  In this context, a trade secret may exist in a unique combination or compilation of information otherwise publicly available.  *See Lowndes Prods.*, 191 S.E.2d at 764; *see also Woven Elecs. Corp. v. Advance Grp., Inc.*, 930 F.2d 913, Nos. 89-1580 & 89-1588, 1991 WL 54118, at *3 (4th Cir. Apr. 15, 1991), *as amended* May 6, 1991.  However, such a compilation trade secret must be sufficiently identified to provide reasonable details concerning the information which makes up the secret and how that information relates together to form the secret.  *See Decision Insights, Inc. v. Sentia Group, Inc.*, 311 F. App'x 586, 594–95 (4th Cir. 2009).  Even if some portions of a compilation of confidential information are publicly available, it can still be considered, in its entirety, as a trade secret. *See IHS Global Ltd. v. Trade Data Monitor, LLC*, C/A No. 2:18-cv-01025-DCN, 2021 WL 2134909, at *7 (D.S.C. May 21, 2021).

The Court finds Plaintiff has shown a likelihood that its algorithms—including dynamic adjustment of the multiplier, proprietary timing of blood glucose checks, management of hyperglycemic crisis, mealtime insulin dosing recommendations, and intravenous to subcutaneous insulin transition recommendations—developed for Glucommander's software system constitute "trade secrets" under both the SCTSA and DTSA definitions.  As an initial matter, the Court finds that Plaintiff has set out with sufficient particularity what trade secrets are at issue in this action.  "Reasonable particularity" is a fact specific inquiry that requires a plaintiff to disclose sufficient information to put a defendant on notice of the nature of the plaintiff's claims and allow the defendant to discern the relevancy of any requested discovery to the alleged trade

secrets. *Structural Pres. Sys., LLC v. Andrews*, No. CV 12-1850, 2014 WL 12738910, at *2 (D. Md. Mar. 26, 2014).

In this instance, Plaintiff has done more than merely listing products it claims contain trade secrets. *Id.* ("[A] trade secret plaintiff does not identify its alleged trade secrets with 'reasonable particularity' by merely listing products which it claims contain trade secrets . . . ."). Plaintiff has provided descriptions of how its algorithms developed for Glucommander generally operate. ECF Nos. 1-1 at 51–53; 35 at 4. Further, at the hearing, Plaintiff elaborated on how these trade secret algorithms included the nuances of "the times when [Glucommander] does not follow the rules" in making specific adjustments for patient treatment. Plaintiff's descriptions of these operations, which it contends are trade secrets, are "particular enough as to separate the trade secret from matters of general knowledge in the trade or of special knowledge of persons skilled in the trade." *Structural Pres. Sys.*, 2014 WL 12738910, at *2. While Defendants may desire a more particularized description of the alleged trade secrets the Court finds that Plaintiff's allegations are sufficient at this stage in the litigation to place Defendants on notice as to the trade secrets they are accused of misappropriating. Indeed, "[t]he exact nature of the trade secret is a matter for discovery." *Indus. Packaging Supplies, Inc. v. Davidson*, No. CV 6:18-0651-TMC, 2018 WL 10456201, at *6 (D.S.C. June 22, 2018) (citations omitted); *Decision Insights, Inc.*, 311 F. App'x at 592–93 ("[T]he determination whether a trade secret exists ordinarily presents a question of fact to be determined by the fact finder from the greater weight of the evidence." (quoting *Microstrategy, Inc. v. Li,* 601 S.E.2d 580, 589 (Va. 2004))). Accordingly, the Court finds that Plaintiff has provided enough of a description of its trade secrets with reasonable particularity at this stage of litigation.

Further, Plaintiff has provided evidence indicating that the information regarding the *specifics* of how Glucommander's algorithms make adjustments or exceptions in its operations are not disclosed to the public. *See* ECF Nos. 10-3 at 3 (discussing Defendant employees' failed attempts to discover Plaintiff's proprietary algorithms by searching publicly available information and outlining how Plaintiff protects and safeguards such proprietary information); 32-1 (explaining that the information in patents and articles provide examples and general frameworks but do not identify the configurations Glucommander actually uses).   This information regarding the configurations of Glucommander and how its software resolves conflicting clinical inputs is protected as "trade secrets" because such information "'derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.'" *Pearl Ins. Grp., LLC v. Baker*, C/A No. 0:18-cv-02353-JMC, 2018 WL 4103333, at \*4 (quoting 18 U.S.C. § 1839(3)).   Further, Plaintiff has also presented evidence that it took reasonable steps to protect the secrecy of its proprietary information.  *See* ECF No. 35-1.

Defendant argues that Plaintiff's proprietary information is not entitled to trade secret protection because this information can be found in the public domain.  ECF No. 23 at 6–19.  Defendant cites to articles and patent applications concerning Plaintiff's products and research.  *See* ECF Nos. 23 at 7–18.  The Court disagrees with Defendant's depiction of the breadth and scope of the disclosures in these public documents.  As the Fourth Circuit has explained, a "trade secret can exist in the unique combination of otherwise known components; although each of its parts, by itself, may be in the public

domain, the unified process, design and operation of the combination may be the essence of the secret." *Woven Elecs. Corp.*, 930 F.2d 913, at *4 (applying South Carolina law). At this point, based on the allegations and exhibits presented to the Court, it does not appear that the information needed to recreate Glucommander's "unified process, design and operation" was in the public domain. While the publicly available information cited by Defendant does provide some examples and explanations of how Plaintiff's product would operate under certain situations along with some basic calculations and formulas, these documents do not appear to provide exact specifications of how Glucommander's algorithms operate to configure information and make adjustment as needed in the clinical setting, which Plaintiff contends is proprietary information. *See* ECF Nos. 23-4–23-11. Accordingly, the Court finds Plaintiff has alleged with sufficient particularity the existence of "trade secrets" when it comes to Glucommander's specific algorithms.

ii. Misappropriation of a Trade Secret

Once a plaintiff has established the existence of a trade secret, the SCTSA and the DTSA provide this Court with the authority to issue the injunctive relief upon a showing of either actual or threatened misappropriation of its "trade secrets." *See* S.C. Code Ann. § 39-8-50(A) (providing that "[a]ctual or threatened misappropriation may be enjoined"); 18 U.S.C. § 1836(b)(3)(A); S.C. Code Ann. § 39-8-50(C); 18 U.S.C. § 1839(b)(3)(A)(i) (authorizing the court to grant an injunction "to prevent any actual or threatened misappropriation"). "The availability of injunctive relief for 'threatened' misappropriation of trade secrets requires no evidence of actual harm to support an injunction." *Prysmian*, 573 F. Supp. 3d at 1042. These provisions serve an important policy function in preserving the value of trade secrets, because a trade secret, once lost, is "lost forever."

11

*See, e.g.*, *Vessel Med., Inc. v. Elliot*, C/A No. 6:15-cv-00330-MGL, 2015 WL 5437173, at *9 (D.S.C. Sept. 15, 2015). At the hearing, the Parties agreed that there is no evidence at this time that the trade secrets at issue have been disclosed by Defendant to any third parties. However, Plaintiff has presented evidence that disclosure has been contemplated by Defendant's employees, and thus a threat of misappropriation of its trade secrets. *See* ECF Nos. 35 at 2; 35-22; 35-23. Accordingly, the Court finds that Plaintiff has shown a likelihood of success on the merits of its claims for trade secret misappropriation.

b. <u>Breach of Contract Claim</u>

Plaintiff brings a claim for breach of contract and breach of contract by fraudulent act. ECF No. 1-1 at 66–68, 72–73. To recover for a breach of contract in South Carolina, a party must prove: (1) a binding contract was entered into by the parties; (2) breach or unjustifiable failure to perform the contract; and (3) damage suffered by the plaintiff as a direct and proximate result of the breach. *See Fuller v. E. Fire & Cas. Ins. Co.*, 124 S.E.2d 602, 610 (S.C. 1962). A breach of contract is defined as a "[v]iolation of contractual obligation by failing to perform one's own promise, by repudiating it, or by interfering with another party's performance." Black's Law Dictionary 225 (10th ed. 2014).

The Court finds that Plaintiff has demonstrated a strong likelihood of success on the merits on its breach of contract claims. The Parties do not dispute that they entered into a valid and enforceable contract. In the Agreement, the Parties agreed to the following terms:

> [Defendant] shall not and shall not permit anyone else (including its Affiliates) to, directly or indirectly, copy, reproduce, amend, modify, create derivative works of, adapt, translate, distribute, reverse engineer, reverse assemble,

> disassemble, decompile, attempt to discover the source code or structure sequence or organization of any software accessed or provided hereunder. . . . [Defendant] shall not, directly or indirectly, and shall not permit anyone else (including its Affiliates) to access or use the Glytec Services or Documentation in any manner in connection with or to develop a commercially available or competing product or service. . . . The Glytec Service is a product proprietary to [Plaintiff] based upon and containing trade secrets and other confidential information of [Plaintiff], and [Plaintiff] owns all right, title, interest, including all intellectual property rights, in and to the Glytec Service and documentation.

ECF No. 1-1 at 55. Plaintiff has provided substantial evidence to support its claim that Defendant breached these terms by reverse engineering software accessed or provided under the contract and by allowing its employees to access or use Plaintiff's to developing a commercially available or competing product or service. *See* ECF No. 1-1 at 56–64. Specifically, Plaintiff alleges Defendant's employees were tasked with developing a replacement for Gluccommander and provides internal communications between Defendant's employees setting out how they intended to reverse engineer and testing this against Glucommander. *Id.* at 56–61; *see, e.g.*, ECF No. 35 at 6–14 (citing multiple communications between Defendant's employees discussing the need and attempts to "crack the Glucommander code"). Further, Plaintiff has alleged damages as a direct and proximate result of this breach. ECF Nos. 1-1 at 67; 35 at 16. Accordingly, there are sufficient factual allegations, and supporting evidence, to conclude there exists a likelihood of success on the merits as to all the elements of a breach of contract.

Defendant contends that Plaintiff cannot show a likelihood of success on the merits of its breach of contract claim because this claim is preempted by federal law. ECF No.

23 at 19–20.[5]  Defendant argues that Plaintiff has committed the information it claims are "trade secrets" to the public domain in the course of seeking federal patent protection, and, thus, in the eyes of Defendant, federal patent law preempts state contract law in this case.  *Id.*  Plaintiff argues its claims are not preempted.  ECF No. 32 at 6.  The Court agrees with Plaintiff.  As outlined above, a "trade secret can exist in the unique combination of otherwise known components; although each of its parts, by itself, may be in the public domain, the unified process, design and operation of the combination may be the essence of the secret."  *Woven Elecs. Corp.*, 930 F.2d 913, at *4 (applying South Carolina law).  As explained by the Court above, the unique configurations of Glucommander's algorithms and how its software resolves conflicting clinical inputs it is not apparent from publicly available information.  Accordingly, the Court finds Plaintiff's breach of contract claim is not preempted by federal patent law and Plaintiff has shown a likelihood of success on the merits of its breach of contract claim.

---

[5] Defendant also refers to its discussion included in its Motion to Dismiss.  ECF No. 23 at 19.  The practice of incorporating arguments from one memorandum by reference into another memorandum is disfavored. *See South Carolina v. United States*, 232 F. Supp. 3d 785, 795–96 (D.S.C. 2017).  Indeed, this Court has questioned the propriety of this practice and generally found it to be inappropriate as "[c]ounsel should not treat judges as if we were 'pigs, hunting for truffles buried in briefs.'"  *Id.* at 795–96 (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).  Moreover, Defendant represents that it has "present[ed] the primary legal authorities" for its arguments on the likelihood of the merits of Plaintiff's claims in its response brief.  ECF No. 23 at 19.  The Court reviewed the arguments contained on the four corners of the Motion and corresponding responses and replies now under review but does not address Defendant's Motion to Dismiss.  Further, the Court encourages the Parties to forego the practice and to present to the Court any arguments that it should consider by placing them into the text of their memoranda rather than by incorporating them by reference to other memoranda.

2.  *Irreparable Harm*

Second, the moving party must make a clear showing that it is likely to be irreparably harmed if preliminary relief is denied.  *Winter,* 555 U.S. at 20.  The harm to be prevented must be of an immediate nature and not simply a remote possibility.  *Am. Whitewater v. Tidwell*, C/A No. 8:09-cv-02665-JMC, 2010 WL 5019879, at *11 (D.S.C. Dec. 2, 2010) (citing *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003)).  When analyzing the irreparable harm element, the Court must make two inquiries: 1) whether the plaintiff is indeed suffering actual and imminent harm; and 2) whether that harm is truly irreparable, or whether it can be remedied later with money damages.  *Sauer-Danfoss Co. v. Nianzhu Luo*, C/A No. 8:12-cv-3435-HMH, 2012 WL 6042831, at *1 (D.S.C. Dec. 5, 2012) (quoting *First Quality Tissue SE, LLC v. Metso Paper USA, Inc.*, C/A No. 8:11-cv-2457-TMC, 2011 WL 6122639, at *2 (D.S.C. Dec. 9, 2011)).  To demonstrate a need for injunctive relief, a plaintiff must show how the harm suffered is such that other forms of damages available in the normal course of litigation are not enough.  "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough," because of "the possibility that adequate compensatory or other corrective relief will be available at a later date." *Hughes Network Sys. v. InterDigital Comm'ns Corp.*, 17 F.3d 691, 694 (4th Cir. 1994).  This "weighs heavily against a claim of irreparable harm." *Id.* More specifically, "[a] preliminary injunction is not normally available where the harm at issue can be remedied by money damages."  *Bethesda Softworks, LLC v. Interplay Entm't Corp.*, 452 F. App'x 351, 353 (4th Cir. 2011).

Irreparable harm may be established by the loss of market share or price erosion, neither of which can be compensated through money damages alone. *See Z-Man Fishing Prods., Inc. v. Renosky*, 790 F. Supp. 2d 418, 433 (D.S.C. 2011). Similarly, "[t]he loss of a trade secret is irreparable harm, and the threatened disclosure of a trade secret supports the imposition of injunctive relief." *Nucor Corp.*, 2008 WL 9894350, at *20 (citing *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 49 (2d Cir. 1999); *FMC Corp. v. Varco Int'l, Inc.*, 677 F.2d 500, 504-05 (5th Cir. 1982)). The "loss of even a single trade secret is irreparable harm, and the threatened disclosure of a trade secret supports the imposition of injunctive relief." *See Nucor Corp.*, 2008 WL 9894350 at *20 (citations omitted). Further, the loss of a trade secret is difficult to measure in monetary damages because once the secret is lost, it is indeed lost forever. *See id.* As such, even the "threatened disclosure of a trade secret supports the imposition of injunctive relief." *Nucor Corp.*, 2008 WL 9894350, at *20.

The Court finds Plaintiff has shown by a preponderance of the evidence that it will suffer irreparable harm if Defendant is not enjoined from disclosing or using Plaintiff's trade secrets in violation of the SCTSA and the DTSA. Plaintiff has provided evidence showing Defendant's employees intent to share the Prisma Software, which Plaintiff contends was built using its trade secrets, with third parties. This evidence demonstrates more than a mere remote and speculative possibility of harm. *See Vessel Med., Inc.*, 2015 WL 5437173, at *9 (finding that in cases involving the misappropriation or threatened misappropriation of trade secrets, courts generally presume that the harm from a wrong will be irreparable and "difficult to measure in monetary damages because once the secret is lost, it is indeed lost forever"). Given that Defendant's employees met with other

hospitals in the development stages of the Prisma Software and stated an intent to take the developed Prisma Software on a "roadshow," Plaintiff has shown "threatened disclosure of a trade secret" that is imminent and supports the imposition of injunctive relief. *See Nucor Corp.*, 2008 WL 9894350 at *20. Accordingly, Plaintiff has satisfied its burden of showing immediate and irreparable harm.

       3. *Balance of the Equities*

       Third, the moving party must show that the balance of equities tips in its favor. *Winter,* 555 U.S. at 20; *see also Uhlig, LLC v. Shirley,* C/A No. 6:08-cv-01208-JMC, 2012 WL 2458062, at *4 (D.S.C. June 27, 2012). "The doctrines that 'He who seeks equity must do equity' and that 'He who comes into equity must come with clean hands' are firmly established in South Carolina as applicable to any of the multitude of matters which may arise in equity." *Associated Spring Corp. v. Roy F. Wilson & Avnet, Inc.*, 410 F. Supp. 967, 978 (D.S.C. 1976) (citing *Mayfield v. British & Am. Mfg. Co.*, 88 S.E. 370 (S.C. 1916); *Taff v. Smith*, 103 S.E. 551 (S.C. 1920); *Shumaker v. Shumaker*, 108 S.E.2d 682 (S.C. 1959)). This Court has found that "these cases do require that the inequitable conduct by the plaintiff of which defendant complains must have occurred in connection with the transaction at issue." *Associated Spring Corp.*, 410 F. Supp. at 978. The Court finds the balance of equities tips in Plaintiff's favor, thereby warranting injunctive relief.

       With respect to Plaintiff's trade secrets claims, as set out in briefing and clarified at the hearing before this Court, Plaintiff only seeks to enjoin Defendants from disseminating its confidential and trade secret information to third parties. Plaintiff does not seek to prevent Defendant from using the Prisma Software, allegedly created from misappropriation of Plaintiff's trade secrets, to treat patients in Defendant's care. Further,

at the hearing, Plaintiff agreed Defendant's dissemination information pertaining to the Prisma Software limited solely to use within their own hospital system for their own patients would not pose a risk of irreparable harm. Given the caveats that Plaintiff has conceded to in order to allow for patient care by Defendant, any hardship to Defendant is modest compared to the hardship Plaintiff is likely to suffer if Defendant are not preliminarily enjoined from sharing the Prisma Software to unnecessary third parties. *See Pearl Ins. Grp.*, C/A No. 0:18-cv-02353-JMC, 2018 WL 4103333 at *5; *Vessel Med., Inc.*, 2015 WL 5437173, at *10. Moreover, allowing use of the Prisma Software for direct patient care by Defendant while restricting Defendant's publication to third parties would preserve the current status quo. *See Di Biase*, 872 F.3d at 230 (citation omitted) (noting the purpose of a preliminary injunction is "to protect the status quo").

4. *Public Interest*

Fourth, the district court must consider whether grant or denial of the injunction is in the public interest. The Court must give "particular regard" to the public consequences of granting a preliminary injunction. *Winter,* 555 U.S. at 23–24. The Court finds last factor meriting injunctive relief is also satisfied because the public interest favors enforcing laws protecting trade secrets and preventing unfair competition in the marketplace. Courts have recognized that trade secret protection serves the public interest and promotes fair competition. *See U.S. v. Sells Eng'g*, 463 U.S. 418, 471 (1983) (holding that injunctive relief is warranted where entry was "advancing the public interest by deterring violations of our laws"); *Uhlig, LLC*, 2008 WL 3057290, *8 (protecting confidential information and ensuring fair competition are important public interests). Further, as addressed above in the Court's analysis of the balance of the equities, Plaintiff has agreed to Defendant's

18

continued use of the Prisma Software to treat its patients.  Accordingly, based on its review of the record, the Court finds the public interest weighs in favor of granting partial injunctive relief to Plaintiff.

**B.  Bond**

Rule 65 provides that "[t]he [C]ourt may issue a preliminary injunction . . . only if the movant gives security in an amount that the [C]ourt considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).  The Court "retains the discretion to set the bond amount as it sees fit or waive the security requirement" altogether.  *Pashby v. Delia*, 709 F.3d 307, 332 (4th Cir. 2013) (citing *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir. 1999); *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995)).

Regarding bond, Plaintiff cites to a provision in the Agreement, which provides "[Plaintiff] shall be entitled to injunctive and other equitable remedies to prevent or restrain, temporarily or permanently, such breach or threatened breach [of the Agreement], without the necessity of posting any bond or surety."  ECF No. 10-2 at 6. Defendants suggest the Court impose a significant bond to reflect the impact Plaintiff's requested relief will have on Defendant's patient care throughout the state of South Carolina.  ECF No. 23 at 32.  After considering the circumstances alleged in this Motion for Preliminary Injunction and the limited scope of injunctive relief necessary to maintain the status quo and prevent further harm to Plaintiff while allowing necessary use for direct patient care, the Court concludes that a small or nominal amount of security will suffice. *See Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,* 174 F.3d 411, 421 n.3 (4th Cir.1999)

("In some circumstances, a nominal bond may suffice."). Accordingly, the Court will require Plaintiff to post a security bond of one-thousand dollars ($1,000.00). *See id.* at 421 (acknowledging the requirement that a district court can set the bond "in such sum as the court deems proper").

## IV. CONCLUSION

Plaintiff has met the elements of a preliminary injunction. For the foregoing reasons, Plaintiff's Motion (ECF No. 10) is **GRANTED IN PART**. The Court orders the following injunctive relief:

1. This Order shall be binding on Defendant, its officers, directors, employees, agents, and all persons and entities with actual or constructive knowledge of its contents.

2. Defendant is enjoined from the following pending final resolution of this case or further order of the Court:

   a. outside of the limited scope needed for direct patient care by Defendant's physicians or other necessary medical care providers, disclosing or disseminating in any manner, by presentation or otherwise, either directly or indirectly, any Glytec Trade Secrets or other Glytec confidential information;

   b. acquiring, using, disclosing, or disseminating in any manner, either directly or indirectly, any Glytec Trade Secrets or other Glytec confidential information not already embodied in the Prisma Software;

   c. outside of the limited scope needed for direct patient care by Defendant's physicians or other necessary medical care providers, disclosing or

disseminating in any manner, by presentation or otherwise, either directly or indirectly, the Prisma Software, which is a competing product that Defendant uses in lieu of the Glucommander;

d. marketing, promoting, selling, licensing, offering for sale, offering for license or transferring the Prisma Software; and

e. altering, erasing, deleting, destroying, or modifying any version of the Prisma Software.

3. Defendant must take the following affirmative steps pending final resolution of this case or further order of the Court:

a. provide a copy of this order to all employees that were involved in the development of the Prisma Software;

b. within ten (10) days of entry of this Order, identify all persons or entities with whom Defendant has shared any aspect of Glytec's Trade Secrets or the Prisma Software, as well as a list of anticipated necessary parties with whom this information will need to be shared in order to provide patient care;

c. within ten (10) days of entry of this Order, provide notice of this Order to all persons and entities with whom Defendant has shared any aspect of Glytec's Trade Secrets or the Prisma Software. If any aspect of Glytec's Trade Secrets or the Defendant must be shared to additional parties in order to provide patient care after this initial notice, then Defendant must provide notice to those additional parties within ten (10) days of sharing this information;

d. preserve a copy of all versions of the Prisma Software;

e. preserve all communications and documents, whether in paper or electronic form, regarding development of the Prisma Software, potential disclosure of the Prisma Software or elements thereof by presentation or otherwise;

f. preserve all communications and documents, whether in paper or electronic form, regarding Glytec Trade Secrets or other Glytec confidential information relating to the Glucommander software or other licensed Glytec Software; and

g. Retrieve and return to Plaintiff within ten (10) days all documents, whether in paper or electronic form, containing any Glytec Trade Secrets or other Glytec confidential information in Defendant's possession, custody or control or that Defendant transmitted or transferred to anyone else. Defendant's Counsel may keep a copy of the aforementioned documents until the conclusion of this case, and such documents may only be shared with agents and employees of Defendant with the consent of Plaintiff or by further order of the Court.

IT IS SO ORDERED.

**s/ Donald C. Coggins, Jr.**
United States District Judge

June 25, 2025
Spartanburg, South Carolina